

SEALED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1. I, Charles J. Kitchen, being duly sworn, depose and state that I am a Special Agent (SA) of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed for over 9 years. I am assigned to the HSI Wilmington, North Carolina field office (HSI-Wilmington) and my duties include, among other things, investigating violations of Titles 8, 18, 19, 21, and 22 of the United States Code. As part of these duties, I have led or participated in hundreds of investigations involving criminal and/or administrative violations related to money laundering, intellectual property rights, narcotics trafficking, bulk cash smuggling, identity theft, immigration benefit fraud, document fraud, visa fraud, human smuggling, human trafficking, the illegal entry and/or re-entry of aliens, and immigration status violators. Prior to reporting for assignment at HSI-Wilmington, I attended training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I received instruction in Federal criminal statutes, search, seizure and arrest authority, use of force, and many other facets of federal and general law enforcement.

2. This affidavit is made in support of a search warrant of the residence of Jacques Yves Sebastien DUROSEAU (hereinafter "DUROSEAU") and Taylor Hickey (hereinafter "HICKEY"), located at 302 Onyx Court, Jacksonville, North Carolina 28546 (hereinafter "SUBJECT PREMISES"), within the Eastern District of North

1

Carolina. The SUBJECT PREMISES is more particularly described in Attachment A of this Affidavit.

3. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the SUBJECT PREMISES, I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 912 (impersonation of an officer of the United States), 554 (smuggling goods from the United States), and 22 U.S.C. § 2778 (control of arms exports and imports) (hereinafter "SPECIFIED FEDERAL OFFENSES") will be located at the SUBJECT PREMISES. More specifically, I seek authorization to locate items described in Attachment B and to seize those items as evidence, fruits, and instrumentalities of the SPECIFIED FEDERAL OFFENSES.

4. The information contained within this affidavit is based on my personal knowledge, observations made during the course of this investigation, information provided to me by other law enforcement officers, and information gained through training and experience. Since this affidavit is submitted for the limited purpose of supporting a search warrant for the SUBJECT PREMISES, I have not included every fact known to me concerning this investigation.

**BACKGROUND ON EXPORTATION OF FIREARMS**

5. Most firearms and ammunition must be exported in accordance with the provisions of the Arms Export Control Act of 1976. Regulations implementing this Act generally require a license to be obtained from the U.S. Department of State,

2

Directorate of Defense Trade Controls. The Arms Export Control Act requires that all exporters register with the Directorate of Defense Trade Controls (DDTC) as described in the International Traffic in Arms Regulations (ITAR) part 122. It is punishable up to 20 years in prison for exporting firearms without having first obtained from the Department of State a license for such export. All the firearms involved in this investigation require a license for exportation.

## PROBABLE CAUSE

6. On November 2, 2019, HICKEY, a reserve officer with the rank of Sergeant with United States Marine Corps, purchased an American Airlines ticket for DUROSEAU, an active duty United States Marine.[1] The ticket scheduled DUROSEAU to depart on November 11, 2019, from the Coastal Carolina Regional Airport in New Bern, North Carolina, to Port Au Prince, Haiti.

7. On November 11, 2019, DUROSEAU and HICKEY appeared at the Coastal Carolina Regional Airport in New Bern, North Carolina. DUROSEAU was wearing plain clothes. However, a review of airport Closed Circuit Television (CCTV) appears to show HICKEY wearing a Marine Corps Battle Dress Uniform (BDU) with the rank of Captain. HICKEY is not on active duty. HICKEY is in a Reserve Unit enlisted as a Sergeant. Based on conversations with other law enforcement agents and retired military members, it is reasonable to believe HICKEY wore the uniform to gain a benefit or obtain preferential treatment at the airport on Veterans Day.

---

[1] The ticket was issued under the last name "DUR_D_SEAU." However, this appears to be a typo.

3

Additionally, your affiant learned that American Airlines offers complimentary checking of up to three bags for military personnel.

8. On the same date, at the airport, both DUROSEAU and HICKEY checked three suitcases and three plastic boxes containing firearms with American Airlines. While DUROSEAU was checking in the firearm containers, HICKEY was taking notes in a notebook off to the side. The first two plastic boxes contained firearms, the third case contained ammunition. DUROSEAU removed some ammunition and handed it to HICKEY because the ammunition was making the third case too heavy. DUROSEAU filled out a firearm declaration form with American Airlines stating that the firearms were unloaded. Neither DUROSEAU had authorization from the Marines to leave the United States nor permission to export any firearms.

9. On November 12, 2019, DUROSEAU landed at Toussaint Louverture International Airport, Haiti. DUROSEAU was selected for a secondary inspection of his luggage by General Administration of Customs (AGD). AGD discovered a Beretta model 65490, serial number M9-3724 (hereinafter "Firearm #1"); a Sig Sauer model SP2022, serial number 24B203450 (hereinafter "Firearm #2"); a Sig Sauer model P229, serial number 55B006006 (hereinafter "Firearm #3); a Sig Sauer model P320, serial number 58A015844 (hereinafter "Firearm #4"); a Spikes Tactical model ST15, serial number SBR-43561 (hereinafter "Firearm #5"); a Spring Field Armory model Saint, serial number ST143091 (hereinafter "Firearm #6"); a Precision Ruger model 300WIN MAG, serial number 1804-07332 (hereinafter "Firearm #7"), and a Armscor

4

Model M1911-A1 CS caliber 45, serial number RIA2051373 (hereinafter "Firearm #8"). Additionally, body armor and United States Marine Lieutenant Colonel uniform was located in DUROSEAU's luggage. The colonel uniform had DUROSEAU's name in the nametag. Haitian authorities took DUROSEAU into custody for local violations.

10. On November 13, 2019, agents with Naval Criminal Investigative Services (NCIS) conducted an electronic trace on the above firearms. The trace revealed that Firearm #7 was purchased by DUROSEAU on October 23, 2019. The address listed for purchase was the SUBJECT PREMISES. Additionally, the trace identified DUROSEAU as being the purchaser of Firearm #3, Firearm #4, Firearm #6, and Firearm #8 with a different address.

11. On November 15, 2019, NCIS agents conducted a trash pull at the SUBJECT PREMISES. In the trash can, which was on the curb, were receipts from a store named "GunShop" located in Jacksonville, North Carolina. DUROSEAU was the customer in the receipts. The receipts were dated July 18, 2018, and were for Firearm #6.

12. On November 18, 2019, your affiant researched government databases for vehicles belonging to DUROSEAU and HICKEY. The search revealed a 2019 Kia Stinger with North Carolina license plate PAS 5898. The primary registered owner was HICKEY and secondary owner DUROSEAU. The address is listed in the vehicle registration is the SUBJECT PREMISES.

13. On November 20, 2019, your affiant received confirmation from United States Customs and Border Protection indicating that Firearms #1-8 require a license from the Department of State to export and that DUROSEAU did not have such a license.

14. On November 21, 2019, your affiant received confirmation that HICKEY used the SUBJECT PREMISES as the address for DUROSEAU's American Airlines ticket.

15. On the same date, your affiant learned that DUROSEAU was charged on August 4, 2019, in Onslow County, North Carolina with No Operators License. At the time of the encounter, DUROSEAU provided the SUBJECT PREMISES as his permanent place of residence.

16. On the same date, your affiant learned that the SUBJECT PREMISES was purchased by DUROSEAU and his spouse (someone other than HICKEY) on or about May 2, 2017, through the Veterans Administration, and are currently listed as the owners.

### FIREARM EXPORTATION CHARACTERISTICS

17. Based upon my training and experience, I have learned that people involved in violations of United States export laws and federal firearms laws frequently maintain in their residences books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the purchase, manufacture, transportation, ordering, sale and illegal transport/transfer/exportation of weapons and ammunition.

18. Additionally, people engaged in violations of United States export laws and federal firearms laws maintain in their residences literature pertaining to the assembly, manufacture and functioning of weapons/ammunition, including, but not limited to: books, pamphlets, drawings, sketches, diagrams, photographs, photocopies, and computer generated or computer stored information of the same.

19. Additionally, I know from my personal experience, and others in law enforcement, that people that engage in violations of United States export laws, keep the original boxes, and other packaging that the firearms are purchased in. These boxes and containers typically indicate information on the boxes including, manufacturer, model, serial number, and place of manufacture. Further, I know from my training and experience, that people engaged in export violations, attempt to conceal their purchases of firearms, and use straw purchasers. Based on traces of the firearms in this investigation at least three of the firearms that were in the possession of DUROSEAU were purchased by other individuals, and there is likely to be records and documentation of those transactions.

20. Items also commonly associated with United States export and federal firearms conspiracies, include, but are not limited to, books, records, telephone books, address books, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, passbooks, bank checks, safe deposit box keys, encryption information, documents reflecting the manner and means to access encrypted entries, computer information stored by means of electronic or magnetic devices, including but not limited to, zip drives, zip disks, fax machines, compact

discs, laptops, personal directory assistants, external drives, flash drives, electronic storage devices, hard drives, back-up hard drives and tapes, as well as printouts or readouts from any magnetic or electronic storage, and other items evidencing the names, nicknames, addresses, phone numbers of members of the weapon/ammunition trafficking organization and evidencing the obtaining, transferring, manufacturing, purchasing of manufacturing components, transferring, concealing and/or concealment of assets and the procurement, conversion, transfer, concealment and/or expenditure of money.

21. Moreover, weapons and ammunition traffickers commonly utilize computers and other electronic media to communicate directly and/or maintain online activity with associates via the Internet. Use of the Internet through email, online social networking, online blogging, peer to peer communication, online gaming, commonly results in the issuance of an Internet Protocol (IP) address. Locating an IP address is important to identifying the registered or actual owner/user of an email, social networking, or other online communication account. IP addresses can be located through receipts, print-outs or other documentation from Internet Service Providers (ISP) account information or cellular account information.

22. Based on the aforementioned information, and based on my knowledge, training, and experience, I expect to find evidence of the SPECIFIED FEDERAL OFFENSES at the SUBJECT PREMISES.

## CONCLUSION

23. Based on the above information, there is probable cause to believe that the SPECIFIED FEDERAL OFFENSES have been violated and that the items listed

8

in Attachment B are to be located at the SUBJECT PREMISES.

24. Based on the above information, I respectfully request that this Court issue a warrant to search the SUBJECT PREMISES, which is more particularly described in Attachment A, and to authorize the seizure of the items described in Attachment B.

*Charles J. Kitchen*
Charles J. Kitchen
Special Agent
Homeland Security Investigations

On this 22 day of November, 2019, Special Agent Charles J. Kitchen, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit

*Robert B. Jones, Jr.*
ROBERT B. JONES, JR.
United States Magistrate Judge

9

## ATTACHMENT A

## PREMISES TO BE SEARCHED

302 Onyx Court, Jacksonville, North Carolina 28546

The SUBJECT PREMISES is located within the Eastern District of North Carolina in Onslow County. The SUBJECT PREMISES is located off of Turquoise Drive on Onyx Court in Jacksonville, NC 28546. The exterior of the SUBJECT PREMISES is constructed of beige siding. One (1) white two car garage door with windows on the top are located on the left side and the front door, which is dark in color and, is located near the middle of the SUBJECT PREMISES. In between the garage door and the front door to the left of the front door is marked "302". A black mailbox is located near the street on the right side of the driveway leading to the SUBJECT PREMISES.



10

## ATTACHMENT B

## PARTICULAR ITEMS TO BE SEARCHED FOR AND SEIZED

This warrant authorizes (i) the search of the SUBJECT PREMISES as described in **Attachment A** for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

a.  Evidence of violations of the below specified federal offenses:

  1.  18 U.S.C. § 912 - impersonation of an officer of the United States; or

  2.  18 U.S.C. § 554- smuggling goods from the United States; or

  3.  22 U.S.C. § 2778 - control of arms exports and imports; or

b.  Any item constituting contraband due to the specified federal offenses, fruits of the specified federal offenses, or other items possessed whose possession is illegal due to the specified federal offenses; or

c.  Any property designed for use, intended for use, or used in committing any of the specified federal offenses.

**Subject to the foregoing, the items authorized to be seized include the following:**

  a. Books, records, receipts, bills of lading, notes, ledgers, papers, business records, and other items relating to the purchase, possession, and use of firearms, ammunition, magazines, firearms parts and accessories and the unlawful export thereof;

  b. Books, records, telephone books, address books, receipts, bank statements and records, money drafts, money order and cashier's checks, receipts, passbooks, bank checks, codes, encryption information, computers, documents reflecting the manner and means to access encrypted entries, computer information stored by means of electronic or magnetic devices, including but not limited to, floppy disks, CD ROM, USB drives, hard drives, back-up hard drives, tapes, and other external recordable media, as well as printouts and readouts from any magnetic or electronic storage, and other items evidencing the names, nicknames, addresses, telephone numbers, Internet Protocol addresses, email addresses, online social media screen names/user names of members of the weapons trafficking organization, known and unknown, and

11

evidencing the procurement, conversion, transfer, and/or concealment of assets and the procurement, conversion, transfer, concealment and/or expenditure of money;
c. Photographs, in particular, photographs of co-conspirators, of assets, and/or firearms, ammunition, magazines, firearms components, parts and accessories;
d. Indicia of occupancy, residency, and/or ownership of the premises, including businesses and residences, which includes but is not limited to, utility and telephone bills, canceled envelopes and keys and documents reflecting the manner and means of the purchase of the property;
e. Telephone bills, cellular telephones, telephone notes pads and notes, contracts, and other documents reflecting the ownership, subscription information, and the use of the telephones, which are often used by weapons trafficking organizations to further related activity;
f. Any firearm, ammunition, and other items pertaining to the possession of firearms and ammunition, including gun cases, safes, ammunition magazines, holsters, spare parts for firearms, firearm cleaning equipment, equipment used in the manufacturing, modification or dismantling of firearms, tools used to obliterate serial numbers, photographs of firearms or of persons in possession of firearms, and receipts for the purchase and/or repair of all these items;
g. Any items designated or suspected designated on the United States Munitions List as defined within the International Traffic in Arms Regulations (22 Code of Federal Regulations §§ 120-130) as administered by the Directorate of Defense Trade Controls under the U.S. Department of State to include ballistic armor (body armor), ballistic plates, ballistic helmets, firearms, ammunition, magazines, components of firearms and documentation supporting the possession, use, export or attempted export of these items;
h. Any items designated or suspected designated as on the United States Commerce Control List (CCL) under the Export Administration Regulations (15 Code of Federal Regulations § §730-774) as administered by the Bureau of Industry and Security (BIS) under the U.S. Department of Commerce to include ballistic armor (body armor), protective jackets, protective vests, protective suits, anti-ballistic articles and similar articles able to be worn on the human body (including the head) designed or adapted to protect the body from the effects of a weapon. Items designed to use or support the use of USML items to include tactical gear, tactical bags, and documentation supporting the possession, use or export or attempted export of these items;
i. Any vehicle, conveyance or vessel used in the export or attempted export of items designated on the United States Munitions List;

12

j. Any items associated with criminal activity or affiliation with criminal organization(s) to include documentation, paraphernalia, photographs, and subsequent electronic versions thereof.
k. Computer hardware, software, peripheral devices, documentation, data security devices and electronic storage devices as necessary to search for and seize the items described above. If computer equipment is seized, the government shall search and analyze such equipment without unnecessary delay and return it after securing any evidence unless the government claims that the equipment is otherwise subject to seizure.
l. Receipts, photographs, military uniforms, rank insignia that could be used to impersonate a military officer.

13